**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOHN LEMANSKI,

      Plaintiff,

v.                                Case No. 19-11253

REV GROUP, INC., et al.,

      Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

Pro se Plaintiff John Lemanki brings an assortment of federal and state law claims against his former employer, Rev Group, Inc. ("Rev"), and his former supervisors, Mandy Pomella and Michael Workman. Plaintiff alleges that Defendants were engaged in a conspiracy to terminate him and that he was terminated in part, based on his attempts to report what he alleges was fraudulent financial information Rev shared with investors. He also asserts that his medical impairments contributed to his termination in violation of the Family Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA"). Defendants move to dismiss all counts of the complaint, and the motion to dismiss has been fully briefed. The court has reviewed the complaint and briefings and concludes that a hearing is not necessary. *See* E.D. Mich. 7.1(f)(2). For the reasons explained below, the court will deny Defendants' motion as to Counts I, II, III, and VI and will grant the motion as to Counts IV, V, VII, VIII, IX, X, and XI.

## II. BACKGROUND

The relevant facts in this case are drawn from the complaint.[1] Plaintiff began his employment with Rev on November 30, 2016, as a sourcing agent. He was tasked with increasing the efficiency of Rev's manufacturing locations, which required him to visit Rev facilities around the country. Plaintiff maintains that he was an exemplary employee during his employment and that, based on his performance, Defendant Pomella offered him a promotion to the position of Commodity Manager. Plaintiff initially declined this promotion because it carried an increased workload, but he eventually accepted the position after Pomella and Workman "promised" him a raise to "level up" his base salary to that of other Commodity Managers at the time of his next annual performance review.

Plaintiff alleges that he met with Rev's Vice President, Marcus Berto, during an in-person meeting in early November 2017. During this meeting, Berto told Plaintiff that he suspected that Rev had "cook[ed] the books" to make the company appear more profitable. In the days after this meeting, Plaintiff spoke with Workman and Pomella and requested an explanation regarding Berto's statements. Workman and Pomella both dismissed his concerns and commented that Berto "did not actually understand the numbers." (ECF No. 1, PageID.9.)

Plaintiff continued to receive exemplary performance remarks and a full bonus. At his annual performance review on February 9, 2018, Plaintiff was awarded a 2% salary raise—the same raise given to all of the Commodity Managers. Plaintiff contends

---

[1] In response to Defendants' Motion to Dismiss, Plaintiff filed a sworn affidavit containing additional factual allegations. (ECF No. 16, PageID.203–212.) The court will not consider the affidavit for purposes of ruling on the instant motion because it is not part of the pleadings. *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (explaining what information comprises the "pleadings" in a case).

that this raise did not fulfill Pomella's earlier promise to "level up" his base salary and alleges that Workman promised to grant him an additional raise the following year, provided his performance remained constant.

On June 7, 2018, Rev publicly announced that it experienced almost $19,000,000 in cost increases due to recently enacted tariffs. Months later, on November 7, 2018, Plaintiff attended a Supply Chain Team Meeting. Rev's Chief Operating Officer, Tom Phillips, also attended that meeting and allegedly told Plaintiff that Rev had "made up" the $19,000,000 cost increase figure as an excuse for investors to explain Rev's recent failure to achieve its forecasted performance results. Plaintiff asserts that Philips and Pomella would discuss this figure "and other subjects" over the phone.

Weeks after the meeting with Phillips, Plaintiff asked Workman to clarify Phillip's comment regarding the "made up" $19,000,000 cost figure. Workman attempted to placate Plaintiff's concerns, but Plaintiff told Workman that he thought this conduct was illegal and that he intended to report his concerns to the FTC. According to Plaintiff, Workman's tone then "changed" and he advised Plaintiff to "move on". Plaintiff claims that he "intended to report Defendants['] statements regarding the fabricated $19,000,000 tariff impacts upon the end of his extensive travel schedule." (ECF No. 1, PageID.16.)

Following his conversation with Workman, Plaintiff claims that Defendants began "intentionally and maliciously create[ing] a hostile work environment" against him. Specifically, Plaintiff began receiving "negative messages" and performance critiques despite his continued exemplary work and adherence to company policy. Additionally,

Plaintiff claims that he became distressed when Workman requested to meet with him later that month. Workman's stated reason for this meeting was to discuss "wire harnesses," but Plaintiff suspected an ulterior reason for the meeting. He became increasing distraught and depressed leading up to the meeting, culminating in a suicide attempt. He sought medical attention the day after his attempt and was hospitalized.

Plaintiff initially sought FMLA leave from December 17, 2018, until December 19, 2018, which Rev approved. He then requested to take a full 12 weeks of leave, which Rev also approved. In the process of finalizing his leave, Rev contacted Plaintiff on December 20, 2018, and asked him to select between using his accrued vacation time to cover his leave or taking his entire FMLA leave unpaid. A week later, Plaintiff responded that he would not accept either option and instead elected to use "the Short Term Disability benefit he was entitled to." (ECF No. 1, PageID 20.) According to Plaintiff, Rev is self-insured and acts as its own short-term disability payee. Plaintiff was terminated less than two hours after requesting to use his short-term disability benefits, purportedly based on policy violations that occurred prior to his leave. Plaintiff further alleges that Rev purposefully delayed payment of his corporate credit card and payment of his short-term disability benefits. Although Plaintiff did ultimately receive his requested disability benefits, he claims that Rev intentionally underpaid him.

### III. STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. Under the Rule, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pleaded factual allegations as true. *Barber v. Miller*, 809 F.3d 840, 843 (6th Cir. 2015).

Pro se complaints are entitled to liberal construction. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). "But pro se litigants must still comply with the procedural rules that govern civil cases." *Tobias v. Michigan*, No. 18-1892, 2018 WL 8969133, at *1 (6th Cir. Dec. 17, 2018) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

Federal Rule of Civil Procedure 8 requires a plaintiff to present in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must provide sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Boland v. Holder*, 682 F.3d 531, 534 (6th Cir. 2012) (emphasis removed) (citing *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## IV. DISCUSSION

Plaintiff brings 11 sperate claims against Defendants. The court analyzes each of these claims below.

### A. FMLA Count I

Plaintiff contends that Defendants violated the FMLA by "interfering with, restraining, or denying" his ability to take leave. (ECF No. 1, PageID.24.) Additionally, Plaintiff asserts that Defendants violated the FMLA by terminating his position. Defendants contend that Plaintiff's allegations cannot sustain a FMLA interference claim. The court agrees; however, the court finds that Plaintiff has alleged sufficient facts to state a claim for FMLA retaliation.

The FMLA entitles employees to take leave for "serious health condition[s]" and prohibits employers from using the taking of FMLA leave as a negative factor in deciding employment benefits. 29 U.S.C. §§ 2612, 2614. There are two distinct theories of recovery under the FMLA: the "entitlement" or "interference" theory arising from 29 U.S.C. § 2615(a)(1) and the "retaliation" or "discrimination" theory arising from 29 U.S.C. § 2615(a)(2). *See Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 334 (6th Cir. 2009).

To state a prima facie claim for FMLA retaliation, a plaintiff must allege that: "(1) he engaged in an activity protected by the [FMLA]; (2) this exercise of his protected rights was known to the defendant; (3) defendant thereafter took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Morris*, 320 F. App'x at 338. The elements

of an FMLA interference claim largely mirror the elements of a retaliation claim but add a  requirement that a plaintiff allege that "his employer denied him FMLA benefits or interfered with FMLA rights to which he was entitled." *Morris*, 320 F. App'x at 336. Read liberally, the complaint states a claim for FMLA retaliation.

Plaintiff admits that Rev approved his full FMLA leave request. (ECF No. 1, PageID.19.) This admission forecloses an interference claim because Plaintiff does not allege that Defendants attempted to dissuade him from taking leave. To the contrary, Rev approved Plaintiff for a full 12 weeks of FMLA leave.

Plaintiff states that he was terminated shortly after requesting leave, but the alleged basis for his termination is not entirely clear—Plaintiff asserts that he was terminated less than two hours after requesting disability benefits to cover his leave. (ECF No. 1, PageID.20.) For purposes of surviving a 12(b)(6) motion, the Sixth Circuit has advised that temporal proximity alone between a plaintiff's request to take FMLA leave and his termination is sufficient to state a retaliation claim. *Greer v. Cleveland Clinic Health Sys. - E. Region*, 503 F. App'x 422, 429 (6th Cir. 2012) ("[T]his court has held that additional scrutiny by ones employers, temporal proximity, or both, are enough to establish the causal nexus needed to make out a prima facie case of FMLA retaliation."). Accordingly, Plaintiff has alleged enough facts to survive dismissal on a retaliation theory against Rev, but his limited allegations cannot sustain a FMLA claim against the individual defendants.

The Sixth Circuit has suggested in dicta that individuals responsible for making employment decisions can be held individually liable under the FMLA. *See Mitchell v. Chapman*, 343 F.3d 811, 827 (6th Cir. 2003), *abrogated on other grounds in 14 Penn*

*Plaza LLC v. Pyett*, 556 U.S. 247 (2009) (internal citations omitted) ("This Court has interpreted the FLSA's 'any person who acts, directly or indirectly, in the interest of the employer' language to impose individual liability on private-sector employers. The presence of identical language in the FMLA tends to support a similar finding."). But the complaint is devoid of any allegations that either Pomella or Workman had the authority to terminate Plaintiff or was involved in the decision to end his employment. Plaintiff's FMLA claim must be dismissed against Pomella and Workman because they cannot be said to have "acted with a retaliatory motive with respect to a decision in which they played no part." *Hall v. Sky Chefs, Inc.*, 784 F. Supp. 2d 811, 831 (E.D. Mich. 2011) (Rosen, J.) (dismissing the plaintiff's FMLA claims against individually named defendants). The court will dismiss Count I against Defendants Workman and Pomella without prejudice. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### B. Violation of Employee Retirement Income Security Act Count II

Plaintiff brings claim under § 510 of Employee Retirement Income Security Act ("ERISA"). Defendants assert that the complaint lacks sufficient details to state a claim. Under § 501 of ERISA:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this title, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140.

To state a prima facie case, Plaintiff must allege "'the existence of (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled.'" *Crawford v. TRW Auto. U.S. LLC*,

560 F.3d 607, 613 (6th Cir. 2009) (quoting *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997)). At this stage, Plaintiff need not demonstrate Defendants' specific intent to violate ERISA. *Id.*

Plaintiff alleges "that after review of the benefits to which Plaintiff was entitled, he was electing neither option demanded by Rev Group, Inc. and instead was requiring to use the Short Term Disability Benefit he was entitled to." (ECF No. 1, PageID.20.) He further alleges that Rev operates its own short-term disability plan, and in response to Defendants' motion, he attaches what appears to be the terms of a short-term disability plan provided by Rev. (ECF No. 16-1, PageID.285–292.) Drawing all reasonable inferences in favor of Plaintiff, he has presented sufficient information to allege the existence of a qualifying plan operated by Rev and that Rev interfered with his receipt of funds to which he was entitled under the plan. The court will deny the motion as to Defendant Rev.

While these allegations are sufficient to state a claim against Rev, they are insufficient to state a cognizable claim against the named defendants. The Sixth Circuit has recognized that employees acting as ERISA plan fiduciaries may be subject to individual liability for violations. *See Hamilton v. Carell*, 243 F.3d 992, 995 n.3 (6th Cir. 2001) ("Carell no longer fit the definition of an ERISA fiduciary such that he could be found individually liable for any breach of fiduciary duty."); *McDowell v. Krawchison*, 125 F.3d 954, 961–62 (6th Cir. 1997). But the factual details necessary to give rise to individual liability are absent from the complaint. Plaintiff does not allege that Defendants Pomella and Workman were involved in plan administration nor that they were plan fiduciaries. That they were employed as Plaintiff's supervisors is insufficient

for individual liability to attach. Accordingly, the court will deny Defendant's motion as to Rev and will grant the motion as to the individual defendants. The court will dismiss Count II against Defendants Pomella and Workman without prejudice.

### C.  ADA Count III

Defendants move to dismiss Count III of the complaint, which asserts a claim for violation of the ADA, on the basis that Plaintiff's conclusory allegations fail to state a claim.

To survive dismissal, Plaintiff must allege that he "(1) is disabled, (2) otherwise qualified to perform the essential functions of the position, with or without accommodation, and (3) suffered an adverse employment action because of his or her disability." *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016). Plaintiff alleges that he was disabled within the meaning of the ADA due to a mental disability, qualified for his position based on his exemplary employment record, and that his disability was a factor in his termination. These allegations are sufficient to put Rev on notice of Plaintiff's claim. Accordingly, the court will deny the motion as to Rev. However, the court will grant the motion and dismiss the claim with prejudice as to Defendants Pomella and Workman because the ADA does not impose individual liability. *See Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Lee may not maintain an action under the ADA . . . against the individual defendants identified in his complaint because . . . the ADA . . . [does not] impose liability upon individuals.").

### D. Wrongful Termination Count IV

Next, Plaintiff alleges that he was terminated in violation of Michigan public policy—Michigan's Whistleblower Protection Act ("WPA")—based on his refusal to relay

the fabricated $19,000,000 tariff impact figure to outside companies. (ECF No. 1, PageID.27.) The court will dismiss Plaintiff's wrongful termination claim because it is preempted by the WPA. *See Dolan v. Cont'l Airlines/Cont'l Exp.*, 563 N.W.2d 23, 28 (Mich. 1997) ("Because the WPA is the exclusive remedy against discharge in retaliation for the conduct at issue, the grant of the motion for summary disposition on the public policy claim is affirmed."); *Driver v. Hanley*, 523 N.W.2d 815, 817 (Mich. Ct. App. 1994) ("[P]laintiff's breach of an employment contract was based solely on the fact that she reported defendants' violations of the law. Accordingly, we conclude that the WPA provided plaintiff with an exclusive remedy and preempted her cause of action."). The WPA preempts a wrongful termination claim even when a WPA claim ultimately proves unsuccessful. *See Allen v. Charter Cty. of Wayne*, 192 F. App'x 347, 353 (6th Cir. 2006) (explaining that failure of the plaintiff's WPA claim does not enable her to pursue a wrongful termination claim). Accordingly, the court will dismiss Plaintiff's wrongful termination claim with prejudice.

### E. Michigan Whistleblower Protection Act Count V

Plaintiff asserts that he was terminated in violation of the WPA because he was terminated as he was "about to report Rev Group, Inc.'s statement that they fabricated the $19,000,000 tariff impact that they published to the public." (ECF No. 1, PageID.28.) "To establish a prima facie case under [the WPA], a plaintiff must show that (1) the plaintiff was engaged in a protected activity as defined by the act, (2) the plaintiff was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action." *Hilden v. Hurley Med. Ctr.*, 831 F. Supp. 2d 1024, 1041 (E.D. Mich. 2011) (Lawson, J.), *aff'd*, 504 F.

App'x 408 (6th Cir. 2012) (internal quotation omitted). "A protected activity under the act consists of '(1) reporting to a public body a violation of a law, regulation, or rule, (2) being about to report such a violation to a public body, or (3) being asked by a public body to participate in an investigation.'" *Manzo v. Petrella*, 683 N.W.2d 699, 704 (Mich. Ct. App. 2004) (quoting *Chandler v. Dowell Schlumberger Inc.,* 572 N.W.2d 210, 212 (Mich. 1998)).

Plaintiff alleges that he intended to report his concerns to the FTC. (ECF No. 1, PageID.16.) Defendants argue that the FTC is not a "public body" under the WPA and that, even if it were, Plaintiff has not adequately alleged that he was "about to report" the misconduct alleged. The court begins by discussing whether the complaint sufficiently alleges that Plaintiff was "about to report" Defendants' alleged misconduct.

The Michigan Supreme Court has interpreted the phrase "about to report" to mean "on the verge of" reporting. *Shallal v. Catholic Soc. Servs.*, 566 N.W.2d 571, 575 (Mich. 1997), *overruled on other grounds in Whitman v. City of Burton*, 831 N.W.2d 223, 226 (Mich. 2013). "In order to successfully allege retaliation for being 'about to report,' a plaintiff must show, with clear and convincing evidence, that the employer had objective notice of the threat to make a complaint to the State." *Smith v. Gentiva Health Servs. (USA) Inc.*, 296 F. Supp. 2d 758, 764 (E.D. Mich. 2003) (Feikens, J.).

Plaintiff alleges that he told Workman that he intended to report his concerns to the FTC. He intended to report "upon the end of his extensive travel schedule in order to have time to seek legal advice as to how to report the concerns appropriate and to protect him from retaliation." (ECF No. 1, PageID.16.) Based on the most recent, published precedent from the Sixth Circuit, it would *appear* that Plaintiff's intention to

report violations at some unspecified time is insufficient to prove that he was on the verge of reporting. *See Campbell v. G4S Secure Sols. (USA) Inc.*, 645 F. App'x 506, 510 (6th Cir. 2016) (motion for summary judgment) ("Merely telling a superior of an alleged violation and testifying to having visited a regulatory agency's website and intending to later report the violation do not clearly and convincingly demonstrate that an employee was about to report."), *but see Cooney v. Bob Evans Farms, Inc.*, 645 F. Supp. 2d 620, 630 (E.D. Mich. 2009) (Rosen, J.), *aff'd* 395 F. App'x 176 (6th Cir. 2010) (motion for summary judgment) (finding that the plaintiff was "on the verge" of reporting when she informed management of her intent to report violations to the Michigan Department of Civil Rights). The court need not resolve the issue of whether Plaintiff was "about to report" to dispose of the claim.

Plaintiff's claim ultimately fails because the government entity to which he alleges he was about to report, the FTC, is not a "public body" under the WPA.

Michigan law defines "public body" as either:

(i) A state officer, employee, agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of state government.

(ii) An agency, board, commission, council, member, or employee of the legislative branch of state government.

(iii) A county, city, township, village, intercounty, intercity, or regional governing body, a council, school district, special district, or municipal corporation, or a board, department, commission, council, agency, or any member or employee thereof.

(iv) Any other body which is created by state or local authority or which is primarily funded by or through state or local authority, or any member or employee of that body.

(v) A law enforcement agency or any member or employee of a law enforcement agency.

(vi) The judiciary and any member or employee of the judiciary.

M.C.L. § 15.361.

The Michigan Court of Appeals has held that a federal agency may qualify as a "law enforcement body" under the WPA in certain circumstances. *See Ernsting v. Ave Maria Coll.*, 736 N.W.2d 574 (Mich. Ct. App. 2007). In *Ernsting*, the Michigan Court of Appeals concluded that the Department of Education ("DOE") was a law enforcement agency within the meaning of the WPA. In reaching this conclusion, the court explained that the DEO had the specific authority to "detect and punish violations of the law." *Id*. at 580. Additionally, the court emphasized the DOE's broad investigatory powers and the authority of the DEO Inspector General to "carry firearms, make arrests without warrants (on the reasonable belief that a felony has been committed), seek and execute warrants, search premises on probable cause, and seize evidence." *Ernsting*, 736 N.W.2d at 582.[2]

Although the FTC holds civil investigatory powers, the court is not persuaded that these powers are comparable to DOE's broad authority to "detect and punish violations of the law," which the *Ernsting* court focused on in deciding that the DEO was a law enforcement agency. The FTC does not have the authority to initiate or prosecute criminal cases and must refer all criminal matters uncovered in the course of its civil investigations to the Attorney General. *See* 15 U.S.C. § 46(k)(1). Furthermore, the FTC

---

[2] Relying on the *Ernsting* case, one court in this district has also held that the Office of Federal Contracts Compliance Program ("OFCCP") constitutes a law enforcement agency under the WPA. *Robinson v. Radian, Inc.*, 624 F. Supp. 2d 617, 629 (E.D. Mich. 2008) (Cox, J.) The precedential value of *Robinson* is minimal, however, because *Robinson* does not discuss the specific powers of the OFCCP that make it comparable to DOE's authority as described in *Ernsting*.

cannot impose criminal stations. Accordingly, the court is not persuaded that the FTC is a "law enforcement body" based on its limited authority to investigate civil matters. The court will grant Defendants' motion on Count V and dismiss the claim with prejudice.

### F. Promissory Estoppel Count VI

In this count, Plaintiff alleges that he was induced into accepting the promotion for Commodity Manager based on Defendants' assurances to "level up" his base salary to that of other Commodity Managers at his next annual performance review. (ECF No. 1, PageID.7.) Defendants argue that the statement to "level up" Plaintiff's salary is too uncertain to constitute an actionable promise and that Plaintiff could not reasonably rely on the statement because he was an at-will employee and had no reasonable expectation of continued employment.

"The doctrine of promissory estoppel is cautiously applied." *Barber v. SMH (US)*, 376, 509 N.W.2d 791, 797 (Mich. Ct. App. 1993). The elements of a promissory estoppel claim under Michigan law are "(1) a promise, (2) that the promisor should reasonably expect to induce action or forbearance on the part of the promisee, (3) that in fact induces such action or forbearance, and (4) injustice can be avoided only by performance of the promise." *Gore v. Flagstar Bank, FSB*, 711 N.W.2d 330, 333 (Mich. 2006). "A promise giving rise to an actionable claim must be 'clear and definite,' while statements that are 'indefinite, equivocal, or not specifically demonstrative of an intention respecting future conduct, cannot serve as the foundation for an actionable reliance.'" *Bodnar v. St. John Providence, Inc.*, No. 337615, 2019 WL 1049639, *5 (Mich. Ct. App. Mar. 5, 2019) (quoting *State Bank of Standish v. Curry*, 500 N.W.2d 104 (Mich. 1993). "In determining whether a requisite promise existed, [the court must]

objectively examine the words and actions surrounding the transaction in question as well as the nature of the relationship between the parties and the circumstances surrounding their actions." *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 552 (Mich. Ct. App. 1999).

Even though Plaintiff does not define the term "level up" the court concludes that he as alleged sufficient facts to state a claim. The parties were engaged in an ongoing employment relationship, and Plaintiff alleges that he was promised a pay increase if he accepted the Commodity Manager position. He further alleges that he accepted the position in reliance on Defendants' promises. The Michigan Supreme Court has held that a promissory estoppel claim can be sustained on similar facts. *See State Bank of Standish*. *State Bank of Standish v. Curry*, 500 N.W.2d 104 (Mich. 1993). In *State Bank of Standish*, the Michigan Supreme Court held that there was sufficient evidence to support the jury's verdict in favor of the plaintiff on a promissory estoppel claim based on defendant's failure to extend additional loan funds. *State Bank of Standish*, 500 N.W.2d at 110–11. The terms of the loan extension were not defined, but "the bank's officers stated that the bank would continue to support" the plaintiff. *Id.* at 110. Additionally, the plaintiff testified that he did not pursue alternative means of financing based on the defendant's assurances of continued support. The court held that the statements of the bank officer, in conjunction with the existence of a non-defaulted loan agreement between the parties at the time of the plaintiff's request for an extension, was sufficient evidence to present the issue to the jury for consideration even though the parties had not defined the precise terms of the loan. *Id.*

Here, the parties had a preexisting employment relationship. Although Defendants did not specify the precise amount of a raise, the promise to "level up" Plaintiff's base salary to that of other Commodity Managers is sufficient to put Defendants on notice of Plaintiff's claim and reasonably estimate the amount of the claim. Based on the facts alleged, Defendants should have reasonably expected the promise to "level up" Plaintiff's salary to induce him into accepting the position because Plaintiff initially rejected the promotion but was persuaded to accept the new position only after Defendants twice promised him a base salary raise. The court will deny Defendants' motion as to Count VI because Plaintiff's allegations are sufficient to survive 12(b)(6) dismissal.

### G. Fraudulent Inducement and Fraudulent Misrepresentation Counts VII & VIII

Plaintiff brings separate claims for fraudulent inducement and fraudulent misrepresentation based on the same allegations underpinning his promissory estoppel claim—that Defendants would "level up" his base salary if he accepted the Commodity Manager position. Both claims are analyzed under the same elements:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

*Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 280 (Mich. Ct. App. 2003) (citing *M & D, Inc. v. McConkey*, 573 N.W.2d 281 (Mich. Ct. App. 1997)). "An action for fraudulent misrepresentation must be predicated upon a statement of past or existing fact." *Marrero v. McDonnell Douglas Capital Corp.*, 505 N.W.2d 275, 279 (Mich. Ct. App. 1993). In most cases, promises regarding some action to be taken in the future

cannot support a claim for fraud. *Id.* The exception to this general rule is future promises "made in bad faith without intention of performance." *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976). Plaintiff attempts to invoke this exception, alleging that Defendants made the promise to level up his salary "knowing it was false and/ or recklessly without knowledge of its truth." (ECF No. 1, PageID.30–31.) Such conclusory allegations cannot defeat a properly supported motion to dismiss. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *Dietec Co. v. Osirius Grp., LLC*, No. 2:17-CV-10372, 2017 WL 6039557, at *11 (E.D. Mich. Dec. 6, 2017) (Michelson, J.) (dismissing plaintiff's fraudulent inducement claim based on the allegation that defendant "had no intention" of honoring its promise to pay). The court will grant Defendant's Motion to Dismiss on Counts VII and VIII with prejudice.

## H. Intentional Infliction of Emotional Distress Count IX

Plaintiff also brings claims for intentional infliction of emotional distress (IIED) based on his termination and Defendants' increased scrutiny and criticism leading up to his termination. Defendants argue that these allegations are insufficient to state a claim.

"The elements of intentional infliction of emotional distress are (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." *Johnson v. Wayne Cty.*, 540 N.W.2d 66, 74 (Mich. Ct. App. 1995). The Michigan Supreme Court has adopted the Restatement of Tort's explanation for "extreme and outrageous" conduct:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice", or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

*Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 908–09 (Mich. 1985) (quoting Restatement (Second) of Torts § 46)).

Plaintiff cannot sustain a claim for IIED based on his termination."[B]oth state and federal courts in Michigan have repeatedly held as a matter of law that the termination of an individual's employment is not sufficiently outrageous to state a cause of action for intentional infliction of emotional distress." *Scuderi v. Monumental Life Ins. Co.,* 344 F.Supp.2d 584, 606 (E.D. Mich. 2004) (Rosen, J.) (collecting cases). Nor can he sustain a claim based on the other conduct alleged.

In his response, Plaintiff highlights the emotional distress he suffered as a result of Defendant's actions, but Plaintiff's distress alone does not mean that Defendants' conduct was extreme and outrageous. The nature of Defendants' conduct and the extent of Plaintiff's injuries are two distinct elements. Plaintiff's allegations that he was subject to increased scrutiny and negative comments fall within the realm of "insults, indignities, threats, annoyances, petty oppressions, or other trivialities" for which liability

does not attach. *See Roberts*, 374 N.W.2d at 908–09. Accordingly, the court will grant Defendants' motion as to Count IX and will dismiss the claim with prejudice.

## I. RICO Violations Counts X and XI

Finally, Plaintiff brings claim for RICO violations and conspiracy under 18 U.S.C. § 1962(c),(d). The statute grants standing to "[a]ny person *injured in his business or property* by reason of a violation of section 1962." 18 U.S.C. § 1964(c) (emphasis added). "A violation of the statute requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Plaintiff argues that Defendants engaged in RICO violations by publicly sharing the false $19,000,000 tariff impact figure and terminating his position. His claim fails for two reasons.

First, the allegations do not show that Plaintiff has been injured "in his business or property." 18 U.S.C. § 1964(c). Plaintiff was terminated, but as an at-will employee, he did not have a property interest in continued employment. *See Crawford v. Benzie-Leelanau Dist. Health Dep't Bd. of Health*, 636 F. App'x 261, 273 (6th Cir. 2016) (holding that a Michigan at-will employee did not have a property interest in his continued employment). At least one court in this district has considered this very issue and determined that the loss of employment does not constitute a property injury for purposes of sustaining a private RICO action. *See Dunleavy v. Wayne Cty. Comm'n*, No. 04-CV-74670-DT, 2006 WL 8431836, at *2 (E.D. Mich. May 11, 2006) (Friedman, J.).

Second, Plaintiff has not sufficiently alleged the existence of the necessary predicate racketeering acts. Plaintiff alleges that Defendants committed wire fraud on "numerous occasions" but fails to describe these acts with specific and necessary detail. Heightened pleading requirements apply to predicate acts of wire fraud. *Heinrich*, 668 F.3d at 404. To satisfy this heightened pleading requirement, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (quoting *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir.2008)). Plaintiff only alleges that Pomella and Philips discussed the $19,000,000 tariff figure "and other subjects." (ECF No. 1, PageID.12.) Such allegations are insufficient to satisfy the heightened pleading requirements to allege the predicate offenses of wire fraud.

In the absence of any cognizable RICO violation, the conspiracy claim also fails as a matter of law. *Beck v. Prupis*, 529 U.S. 494, 504 (2000) ("[I]njury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO . . . is not sufficient to give rise to a cause of action under § 1964(c) for a violation of § 1962(d)."). Accordingly, the court will grant Defendant's motion and dismiss Counts X and XI.

## V. CONCLUSION

For the reasons explained above, Plaintiff has alleged sufficient facts to proceed against Defendant Rev on claims of FMLA retaliation and violations of ERISA and the ADA. His promissory estoppel claim can also survive dismissal. The court will dismiss the remaining claims subject to the terms described below. Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss (ECF No. 13) is GRANTED IN PART AND DENIED IN PART. It is DENIED as to Count I (FMLA) against Defendant

Rev, Count II (ERISA) against Defendant Rev, Count III (ADA) against Defendant Rev, and Count VI (Promissory Estoppel).

IT IS FURTHER ORDERED that the motion is GRANTED as to Count I (FMLA) against Defendants Pomella and Workman and Count II (ERISA) against Defendants Pomella and Workman. Counts I and II are dismissed WITHOUT PREJUDICE against the individual defendants.

IT IS FURTHER ORDERED that the motion is GRANTED as to Count III (ADA) against Defendants Pomella and Workman, Count IV (Wrongful Termination), Count V (WPA), Count VII (Fraudulent Inducement), Count VIII (Fraudulent Misrepresentation), Count IX (IIED), Count X (RICO) and Count XI (RICO Conspiracy). Count III against Defendants Pomella and Workman and Counts IV, V, VII, VIII, IX, X, and XI are dismissed WITH PREJUDICE.

The following claims survive this order: Count I (FMLA) against Defendant Rev, Count II (ERISA) against Defendant Rev, Count III (ADA) against Defendant Rev, and Count VI (Promissory Estoppel) against all defendants.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  October 24, 2019

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 24, 2019, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\HEK\Civil\19-11253.LEMANSKI.mtd.fmla.ada.wpa.rico.HEK.2.docx